UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LESLIE GERALDES,

Case No.: 23 CV 3925 (AS)

Plaintiff,

**FIRST AMENDED COMPLAINT**

-against-

SPANISH DANCE ARTS COMPANY, INC.,
*doing business as* FLAMENCO VIVO CARLOTA
SANTANA, *and* HANAAH FRECHETTE BATES,
*and* CARLOTA SANTANA, also known as
CAROLEAH KOTCH, *individually*,

Defendants.

Plaintiff, Leslie Geraldes (herein, "Plaintiff"), by and through her undersigned attorneys, Cilenti & Cooper, PLLC and Baker, Braverman & Barbadoro, P.C., respectfully files this First Amended Complaint for wage theft and discrimination on the basis of her race against Defendants, Spanish Dance Arts Company, Inc., doing business as Flamenco Vivo Carlota Santana (herein, "Spanish Dance Arts"), and Hanaah Frechette Bates, and Carlota Santana, also known as Caroleah Kotch, individually (all defendants collectively referred to herein as the "Defendants"), and states as follows:

**INTRODUCTION**

1.     Plaintiff, Leslie Geraldes, alleges that, pursuant to the New York Labor Law, she is entitled to recover from the Defendants: (1) unpaid wages, minimum wages, and overtime compensation; (2) unpaid "spread of hours" premiums for each day she worked in excess of ten (10) hours; (3) liquidated damages and statutory penalties pursuant to the New York Wage Theft Prevention Act; (4) pre-judgment and post-judgment interest; and, (5) attorneys' fees and costs.

2.      In addition, Plaintiff alleges that that the Defendants, jointly and individually, discriminated against her in pay and in the terms, conditions and privileges of employment on the basis of her race, in violation of New York Labor Law §194; the New York City Administrative Code, Chapter 1, §8-107(1)(a)(3); and New York State Executive Law, Article 15, §296, and that she is entitled to recover compensatory and punitive damages thereunder.

## JURISDICTION AND VENUE

3.      The District Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), (c)(1).

4.      The amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

5.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district.

## PARTIES

6.      Plaintiff is an adult citizen of Massachusetts.

7.      Plaintiff has been employed by Spanish Dance Arts continuously since 2008 in various roles and remains employed at present. Prior to 2018, Plaintiff was classified as an independent contractor. Beginning in 2018, Plaintiff worked for Defendants as an employee with the title of Program Director. Since 2022, she has held the title of Program Director, Artist Development; and, as of on or about October 1, 2023 her title became Director, Evolución.

8.      Plaintiff works out of Spanish Dance Arts' offices in Midtown Manhattan. Since May, 2017 she has worked both remotely and in-person at Spanish Dance Arts' Manhattan offices.

9.      At all relevant times, the work performed by Plaintiff was and is directly essential to the mission of Spanish Dance Arts.

10.     At all times relevant to this action, Plaintiff has been employed by Defendants Spanish Dance Arts, Hanaah Frechette Bates, and Carlota Santana, in New York, New York (New York County).

11.     At all times relevant to this action, Defendants, jointly, were Plaintiff's employer within the meaning of the New York Labor Law.

12.     Upon information and belief, Defendant, Spanish Dance Arts was and is a not-for-profit corporation, formed and existing under the laws of the State of New York, with a principal place of business located at 4 West 43rd Street, New York, New York 10036.

13.     Upon information and belief, at all times relevant to this action, Defendant, Hanaah Frechette Bates has been and is an official, director and/or managing agent of Spanish Dance Arts, whose residential address is 12 Fulton Avenue, Jersey City, New Jersey, 07305.

14.     Defendant, Hanaah Frechette Bates, is the Executive Director of Spanish Dance Arts.

15.     Defendant, Hanaah Frechette Bates, is an individual who manages Spanish Dance Arts, and, together with Defendant Carlota Santana, controls all business decisions at Spanish Dance Arts, including but not limited to, the decisions of what compensation the employees will receive and the number of hours the employees, including Plaintiff, were and are required to work.

16.     At all relevant times herein, Defendant, Hanaah Frechette Bates, had authority to make, and in fact made, decisions as to hiring, firing, and as to wages, and acted as Plaintiff's employer as such term is used for purposes of the New York Labor Law.

17.     Defendant Hanaah Frechette Bates exercised sufficient control over Spanish Dance Arts' day-to-day operations as to be considered an employer of Plaintiff under the New York Labor Law.

18.     Defendant, Hanaah Frechette Bates, participated and continues to participate in the day-to-day operations of Spanish Dance Arts as Executive Director, and acted negligently and willfully, and was Plaintiff's "employer" pursuant to the New York Labor Law § 2 and the regulations thereunder, and is jointly and severally liable with Spanish Dance Arts.

19.     Upon information and belief, at all times relevant to this action, Defendant, Carlota Santana, also known as Caroleah Kotch (herein, "Carlota Santana"), has been and is an officer, director and/or managing agent of Spanish Dance Arts, whose residential address is 105 Vista del Rio Drive, Bahama, North Carolina 27503.

20.     Defendant, Carlota Santana is Founder and Artistic Director of Spanish Dance Arts.

21.     Defendant, Carlota Santana, is an individual who manages Spanish Dance Arts, and, together with Defendant Hanaah Frechette Bates, controls all business decisions at Spanish Dance Arts, including but not limited to, the decisions of what compensation the employees will receive and the number of hours the employees, including Plaintiff, were and are required to work.

22.     Defendant, Carlota Santana, participated and continues to participate in the day-to-day operations of Spanish Dance Arts, as Founder and Artistic Director, and acted negligently and willfully, and was Plaintiff's "employer" pursuant to the New York Labor Law § 2 and the regulations thereunder, and is jointly and severally liable with Spanish Dance Arts.

23.     At all relevant times herein, Defendant, Carlota Santana, had authority to make, and in fact made, decisions as to hiring, firing, and as to wages, and acted as Plaintiff's employer as such term is used for purposes of the New York Labor Law.

24.     Defendant Carlota Santana exercised sufficient control over Spanish Dance Arts' day-to-day operations as to be considered an employer of Plaintiff under the New York Labor Law.

25.     At all relevant times herein, Plaintiff performed her work for Spanish Dance Arts under the direction and control of the individual Defendants, Hanaah Frechette Bates and Carlota Santana.

26.     The individual Defendants possessed and exercised control over the terms and conditions of Plaintiff's employment in that they have and have had the power to: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control work of the employees, including Plaintiff, and (v) otherwise affect the quality of their employees employment.

27.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff lawfully earned wages, minimum wages, and overtime compensation, and failed to pay Plaintiff spread of hours premiums, all in contravention of the New York Labor Law.

28.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## STATEMENT OF FACTS
## WAGE AND HOUR CLAIMS

29.     In or about 2008, Plaintiff was hired by Defendants as an independent contractor to work as a performing and teaching artist for Defendants' not-for-profit organization, Spanish Dance Arts, known as "Flamenco Vivo Carlota Santana". She began taking on administrative duties shortly thereafter.

30.     In July 2018, Plaintiff became an employee with the administrative position of Program Director, and then in 2022 her role was shifted to Program Director, Artist Development and recently to Director, Evolución.

31.     At all times relevant to this action, Plaintiff's primary duties have been and continue to be administrative and executive in nature.

32.     At all times relevant to this action, Plaintiff's primary duties and responsibilities were to oversee and execute programs in alignment with Spanish Dance Arts' strategic vision.

33.     At all times relevant hereto, Plaintiff's job duties included leading the Evolución program for developing artists, curating guest artist workshops and training, managing the Artists in Residence Exchange program and providing administrative support to the Artistic Director, Defendant Carlota Santana. Her daily job activities include managing personnel, negotiating contracts, organizing scheduling, providing administrative support to guest artists and students, arranging payment for guest artists, vendors and employees, creating budgets, procuring donors and funding, writing grant proposals on behalf of Spanish Dance Arts and assisting the Artistic Director, Defendant Carlota Santana, with various administrative aspects of Spanish Dance Arts' programming, including the company's performances.

34.     During Plaintiff's employment by Defendants, she has worked and continues to work well over forty (40) hours per week.

35.     Beginning in 2018, Plaintiff generally worked fifty (50) to sixty (60), or more, hours per week, each week.

36.     Some weeks each year, Plaintiff worked and works in excess of seventy (70) hours per week.

37.     Beginning in 2018, it was common for Plaintiff to work more than ten (10) hours per day.

38.     Since 2018, Defendants have been aware and continue to be aware that Plaintiff's hours were consistently in excess of forty (40) hours per week; that Plaintiff often worked in excess of fifty (50) to sixty (60) hours per week; and that Plaintiff often worked more than ten (10) hours per day.

39.     Plaintiff's weekly working hours were not recorded by Defendants and were not itemized on her bi-monthly wage statement.

40.     During Plaintiff's employment, she was paid by check. Work performed above forty (40) hours per week was never paid to Plaintiff at a rate of time and one-half Plaintiff's regular rate, as required by law.

41.     Likewise, Plaintiff was not paid spread of hours premiums as required by law.

42.     At all times relevant to this lawsuit, Plaintiff was paid two (2) times per month, regardless of hours worked, on a salary basis.

43.     Plaintiff did not receive annual wage notices required by New York State wage and hour regulations.

44.     At all times relevant hereto, Plaintiff was improperly classified by Defendants as an "exempt" employee.

45.     At all times relevant hereto, Defendants have failed to pay Plaintiff a salary at or above the threshold for exempt employees in New York.

46.     In June 2018, Plaintiff was paid a salary of twenty-eight thousand dollars ($28,000) per year, or $538.46 per week.

47.     Beginning on or about July 1, 2019, Plaintiff's annual salary was increased to thirty-one thousand dollars ($31,000) per year, or $596.15 per week.

48.     Beginning on or about October 1, 2019, Plaintiff's annual salary was increased to thirty-six thousand dollars ($36,000) per year, or $692.30 per week.

49.     Beginning on or about October 1, 2020, Plaintiff's annual salary was increased to forty thousand dollars ($40,000) per year, or $769.23 per week.

50.     Beginning on or about March 1, 2021, Plaintiff's annual salary was increased to forty-five thousand dollars ($45,000) per year, or $865.38 per week.

51.     Beginning on or about July 1, 2021, Plaintiff's annual salary was increased to fifty-five thousand dollars ($55,000) per year, or $1,057.69 per week.

52.     Beginning on or about July 1, 2022, Plaintiff's annual salary was increased to fifty-seven thousand dollars ($57,000) per year, or $1,096.15 per week.

53.     Plaintiff was, at all times relevant to this action, paid less than the New York City and State salary threshold for exempt employees. Her salary was finally raised above the salary exempt threshold five (5) months after the filing of the initial Complaint.

54.     At all times relevant to this action, Plaintiff was paid a fixed salary, not based on her working hours, and she was not paid additional compensation for hours worked beyond forty (40), each week. She was not paid hourly.

55.     Plaintiff was, at times relevant to this action, paid less than the applicable New York State minimum wage.

56.     Defendants never paid Plaintiff the spread of hours premium for days worked in excess of ten (10) hours.

57.     Defendants knowingly and willfully operated their business with a policy of not paying the New York State spread of hours premium to Plaintiff.

58.     Defendants knowingly and willfully operated their business with a policy of not paying wages to the Plaintiff for all hours worked, minimum wages, New York State overtime (of time and one-half) for work performed over forty (40) hours each work week and spread of hours premiums for each day she worked in excess of ten (10) hours.

59.     At all relevant times, upon information and belief, during the course of Plaintiff's employment, Defendants failed to maintain accurate and sufficient time records.

## STATEMENT OF FACTS
## DISCRIMINATION CLAIMS

60.     Plaintiff is a Mestiza woman of Hispanic and Native American descent.

61.     Throughout the course of her employment with Defendant Spanish Dance Arts, Plaintiff witnessed Defendant Carlota Santana, who is white, make discriminatory comments and take discriminatory actions towards employees of color, including Plaintiff.

62.     Plaintiff, formerly a flamenco dance artist for Defendants' organization, regularly witnessed Defendant Carlota Santana make disparaging remarks against flamenco artists of color and treat them less favorably. For example, Defendant Carlota Santana rarely chose non-white presenting flamenco artists as soloists, and she told Plaintiff specifically that a non-white flamenco artist was "only hired to make the organization appear more diverse" which helped the organization with grant funding.

63.     The discriminatory conduct by Defendant Carlota Santana extended to the administrative side of the organization. In front of the administrative staff, which consisted almost entirely of employees of color, like Plaintiff, Defendant Carlota Santana would make racist comments and take discriminatory actions.

64.     In June, 2020, Defendant Carlota Santana expressed her discriminatory views in comments to a draft of a company-wide diversity, equity and inclusion document that was sent to Plaintiff. In her comments, Defendant Carlota Santana wrote "I have heard I am criticized for using white artists from Spain only …  am [I] expected to use less professional artists just to fill the diversity issue?"

65.     Defendants created an environment that censored employees of color within the organization. For example, Defendant Carlota Santana refused to let employees of color use words like "power", "social justice", "civil rights" and "resistance" in their materials and in the organization's social media posts. However, the organization itself used some of the same words on its own website and white employees received no such supervision over their word choices.

66.     Similarly, Defendant Carlota Santana insisted that the organization's lesson plan for public school students regarding flamenco's history include the "good aspects" and "benefits" of Spain's colonization of the indigenous Latin America and Caribbean people, over the objection of Hispanic employees who found it degrading. Furthermore, Defendant Carlota Santana rejected the inclusion of multiple photos of Roma artists in flamenco history lessons despite the fact that Roma people created the flamenco art form.

67.     When employees of color disagreed with or questioned Defendant Carlota Santana's decisions, they would be labelled as "difficult" and subsequently suffer retaliation such as being cut out of conversations related to key decisions for their role, not being provided with information necessary to complete assignments, and the removal or threatened removal of funding for events they are organizing.

68.     Defendants were aware of the discriminatory environment fostered at Spanish Dance Arts. In a November 2022 employee survey, the words "racist" and "bullying" were two of the top themes used to describe the organization. In fact, both the Human Resources Director and the Executive Director, Defendant Hanaah Frechette Bates, received emails from an employee stating that the organization was "placing an unfair burden on [the employees of color] by making them defend their perspectives and word choices to Carlota" and that they "have seen every single

person of color who has worked in the office cry numerous times out of anger, frustration and exhaustion."

69.     Defendants' pattern of conduct and comments demonstrated clear preference for white employees and discriminatory animus, a bias which has resulted in significant negative repercussions for Plaintiff, who suffered multiple adverse employment actions.

70.     As soon as she joined the administrative side of the organization, Plaintiff's role was constantly expanding, and she was frequently tasked with new, additional responsibilities. In 2018, when Plaintiff's role was shifted from the Director for the Center for Flamenco Arts to Program Director, it represented a significant increase in responsibilities. Despite Plaintiff's request, she was offered no additional compensation.

71.     This pattern continued for the next several years. While taking on more and more responsibilities and exceeding expectations, Plaintiff's salary was kept below the overtime exemption threshold, she was not given promotions or acknowledgement in the form of title changes or opportunities for advancement, and she was wrongfully denied overtime pay. In contrast, white employees were paid over the overtime threshold and were advanced within the organization.

72.     In or around 2019, Plaintiff requested that Defendants provide her with specific criteria and qualifications she needed to achieve to advance within the organization and to have her salary raised to an appropriate level. No requirements or qualifications were given, only vague promises that they would get back to Plaintiff or would "revisit" the situation in a few months, which, to date, has never occurred despite Plaintiff's repeated requests.

73.     In 2020, during the height of the COVID-19 pandemic, Plaintiff created Evolución, a multi-tiered framework of support for developing, performing and professional flamenco artists

that provides education, training and unparalleled support and advancement opportunities. As a result, Plaintiff's workload and responsibilities, and her overtime hours, again increased significantly.

74.     Despite creating an entirely new division that gave the organization a strategic advantage by generating a pipeline of future artists to fuel the organization's mission, Defendants once again denied Plaintiff a promotion or an opportunity for advancement in the organization and continued to keep her salary below the overtime threshold. Plaintiff, unaware of the salary exemption thresholds for overtime at that time, continued to work 60, 70 or 80 hour weeks while being unjustly denied overtime compensation.

75.     In contrast, white employees, such as Defendant Hanaah Frechette Bates, were given higher-paid positions and rapidly advanced within the organization despite limited prior experience. Defendant Carlota Santana made the decision to promote Defendant Hannah Frechette Bates nearly every three (3) years, even creating new positions for her to be able to advance. Defendant Hanaah Frechettte Bates went from being a college intern, who was supervised by Plaintiff, to being the Company Manager, then the Managing Director and ultimately the Executive Director, all within six (6) years.

76.     In February 2021, Plaintiff was told that her title was changing from Program Director to Program Director, Artist Development. Evolución, the program that Plaintiff had created over the prior two years, had more than doubled in size and had attained an international reach and Plaintiff continued to maintain her other duties such as producing company performances and overseeing workshops, among a multitude of other responsibilities. Yet Plaintiff was not promoted, and her salary continued to remain below the overtime threshold.

77.     In March 2021, Defendants hired a white female administrative employee with significantly less experience than Plaintiff and paid her a higher salary than Plaintiff  (a Program Director) and other administrative employees of color who also had significantly more experience.

78.     In sharing the job posting for the new administrative role, Defendant Hanaah Frechette Bates sent an email to Plaintiff and other employees stating that the ideal candidate would have "3-4 years of experience working in arts/culture nonprofit specifically in the areas of marketing and/or development."

79.     Plaintiff had over a decade of experience within the organization and six (6) years of experience working in development and marketing for the organization's non-profit, along with all of her other responsibilities and held a "Director" level position, which is listed as a level above the new position.

80.     At the time of her hiring, the new employee had approximately four (4) years of experience in development and marketing for non-profits. Despite having less experience and being hired for a position at a level below Plaintiff, she was given a salary higher than Plaintiff, a fact of which Plaintiff was unaware of until after the filing of her initial Complaint, in or about May 2023.

81.     During all times material hereto, Defendants' white employees (administrative and directors) were paid higher than Plaintiff and the administrative employees of color, all of whom were paid under the exemption threshold and being denied overtime pay.

82.     On or about December 15, 2022, Plaintiff learned for the first time that she was improperly classified as exempt by Defendants and that she had been wrongfully denied overtime pay for years. During that time, Defendant Hanaah Frechette Bates was out of the office on maternity leave.

83.     In or about February 2023, Defendant Carlota Santana formed an "Artistic Advisory Team" for the organization composed of the Plaintiff and two (2) other company artists. The Artistic Advisory Team's purpose was to assist Defendant Carlota Santana with the organization's artistic vision, adding yet another additional set of responsibilities to Plaintiff's workload without additional compensation and without a title promotion or recognition.

84.     On or about March 28, 2023, Plaintiff asked Defendant Carlota Santana if she would receive any additional compensation for working on the Artistic Advisory Team. Defendant Carlota Santana answered that Plaintiff "had to pay her dues".

85.     Plaintiff responded to Defendant Carlota Santana that after working for the organization for almost fifteen (15) years she had "no more dues to pay" and that she would not continue to work for such low wages or without further compensation.

86.     Defendant Hanaah Frechette Bates returned from maternity leave on or about April 3, 2023.

87.     On or about April 7, 2023, Plaintiff met with Defendant Hanaah Frechette Bates and specifically asked Ms. Bates whether she was aware that Plaintiff was not being paid in accordance with the overtime salary threshold requirements despite working significant overtime hours.  Plaintiff also inquired again about her role, her future with the organization and her lack of advancement.

88.     During this conversation, Defendant Hanaah Frechette Bates acknowledged that Plaintiff worked significant overtime hours. With respect to the overtime threshold, Defendant Hanaah Frechette Bates replied that she would "have to look into that" and stated that she would see what she could do in the next fiscal year to raise Plaintiff's salary. She further acknowledged

that Plaintiff had been performing the duties equivalent to the title of an associate artistic director for some time despite not being given the title.

89.     Defendant Hanaah Frechette Bates failed to take any action to investigate or address the Plaintiff's claims. She never even responded to Plaintiff's questions.

90.     Plaintiff filed her Complaint on May 10, 2023.

91.     Subsequent to the filing of her Complaint, Plaintiff learned that the only administrative employees paid over the exemption threshold were white employees and that a white employee with significantly less experience was being paid a higher salary. Meanwhile, all of the administrative employees of color were paid salaries under the salary exemption threshold. Like Plaintiff, the other employees of color all worked significant overtime hours and were all denied overtime compensation due to them under the law.

92.     Plaintiff has been discriminated against and has suffered disparate treatment based on her race, she has received disparate pay and has been subjected to inferior terms, conditions and privileges of employment in the repeated denial of promotion or advancement and failure to pay overtime pay.

## STATEMENT OF CLAIM
### COUNT I
**[Violation of the New York Labor Law]**

93.     Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "92" of this Amended Complaint as if fully set forth herein.

94.     At all relevant times, Plaintiff was employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

95.     Defendants knowingly and willfully violated Plaintiff's rights by failing to pay Plaintiff wages for all hours worked, minimum wages, overtime compensation at the rate of not less than one and one-half times her regular rate of pay (or the applicable minimum wage, when

higher), for each hour worked in excess of forty (40) hours in a workweek and spread of hours premium for each day she worked in excess of ten (10) hours.

96.     At all times relevant to this action, Defendants willfully disregarded and purposefully evaded overtime compensation requirements of the New York Labor Law by improperly paying a salary less than the New York City threshold required for an exempt employee.

97.     Defendants knowingly and willfully violated Plaintiff's rights by failing to pay spread of hours premiums for each day she worked more than ten (10) hours pursuant to New York State Department of Labor Regulations §§142-2.4.

98.     Defendants willfully disregarded and purposefully evaded record keeping requirements of the New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

99.     Defendants knowingly and falsely provided Plaintiff with a paystub that failed to accurately account for her actual hours worked on a weekly basis.

100.     Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants: (1) unpaid wages, minimum wages, and overtime compensation; (2), unpaid spread of hours premiums for each day she worked in excess of ten (10) hours; (3) liquidated damages and statutory penalties pursuant to New York Labor Law § 663(1); (4) pre-judgement and post-judgment interest; and (5) reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law § 663(1) *et al*. and § 198.

## COUNT II
### [Statutory Penalties Pursuant to the New York State Wage Theft Prevention Act]

101.     Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "100" of this Amended Complaint as if fully set forth herein.

102.    The New York State Wage Theft Prevention Act requires every employer, including Defendants, to notify its employees, in writing, among other things, of the employee's rate of pay and regular pay day. Defendants were also required to provide Plaintiff with accurate statement of wages with every payment of wages as required by New York Labor Law § 195(3).

103.    The wage notice requirement of the New York Wage Theft Prevention Act was designed to prevent wage theft by informing employees of their pay rates.

104.    At all times relevant hereto, Plaintiff was not provided with a proper wage notice or accurate wage statements as required by law.

105.    As a result of the failure to comply with the provisions of the Wage Theft Prevention Act, Plaintiff was harmed by not receiving notice, over the course of several years, that the minimum wage and salary thresholds of the New York Labor Law were not met.

106.    Defendants did not provide Plaintiff with an accurate written statement properly accounting for her actual hours worked, and setting forth her hourly rate of pay, regular wages, and/or overtime wages.

107.    Upon information and belief, Defendants' record-keeping practices were intended to, and did in fact, disguise the actual number of hours Plaintiff worked, in order to avoid paying her for her full hours worked and, overtime compensation due.

108.    By not providing adequate and accurate notice of Plaintiff's hours and wages, Defendants' conduct directly led to concrete harm, *to wit*, the underpayment of wages, to Plaintiff.

109.    Had Defendants been mindful of and complied with the notice requirements of the Wage Theft Prevention Act, it would have been readily apparent that their payroll practices were in violation thereof, and such violations could have been remedied earlier.

110.    Defendants disregarded and purposefully evaded record-keeping requirements of the New York Labor Law by failing to maintain accurate timesheets and payroll records.

111.    Defendants failed to comply with the notice and record-keeping requirements of the New York State Wage Theft Prevention Act and as such are liable for civil penalties, attorneys' fees, and costs.

## COUNT III
**[Violation of the New York Labor Law §194]**

112.    Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "111" of this Amended Complaint as if fully set forth herein.

113.     As a Mestiza woman of Hispanic and Native American descent, Plaintiff is a member of a protected class under the New York Labor Law §194(2)(b).

114.    Plaintiff was paid less than similarly situated employees without protected class status for equal work on a job the performance of which requires equal skill, effort and responsibility and which is performed under similar working conditions and/or substantially similar work, when viewed as a composite of skill, effort and responsibility and performed under similar working conditions.

115.    Plaintiff received positive feedback for her work and was continuously tasked with increased duties and responsibilities to the benefit of Defendants.

116.    Plaintiff was paid less than white employees for equal or substantially similar work performed under similar working conditions.

117.    Plaintiff was denied the opportunity for promotion and advancement, was marginalized in status, while similarly situated white colleagues were advanced within the organization.

118.     Defendant Carlota Santana, the Founder and Artistic Director and key decision-maker of the organization, expressed discriminatory animus against employees of color.

119.     Defendant Hanaah Frechette Bates, the Executive Director and key decision-maker of the organization, had knowledge of the pay discrepancy and denial of promotions to Plaintiff and refused to investigate or remedy the discrimination.

120.     By reason of the actions of Defendants set forth herein, Plaintiff has been caused to sustain damages in the amount to be determined following a trial on the merits plus interest, costs and attorneys' fees.

## COUNT IV
### [Violation of the New York City Human Rights Law]

121.     Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "120" of this Amended Complaint as if fully set forth herein.

122.     At all times material hereto, Defendants Spanish Dance Arts is an "employer" as defined by the New York City Administrative Code, Chapter 1, §8-102.

123.     At all times material hereto, Defendants Hanaah Frechette Bates, and Carlota Santana are "persons" as defined by the New York City Administrative Code, Chapter 1, §8-102.

124.     At all times material hereto, Plaintiff is a "person aggrieved" as defined by the New York City Administrative Code, Chapter 1, §8-102.

125.     As a Mestiza woman of Hispanic and Native American descent, Plaintiff is a member of a protected class under the New York City Administrative Code, Chapter 1, §8-102.

126.     As set forth herein Plaintiff endured disparate treatment and a pattern of discriminatory conduct by Defendants, including but not limited to pay discrepancy and denial of promotion and advancement, directed at Plaintiff because of her race.

127.     Plaintiff received positive feedback for her work and was continuously tasked with additional responsibilities to the benefit of Defendants, yet Plaintiff was paid less than her white colleagues, was denied the opportunity for promotion and advancement, and was marginalized in status while similarly situated white colleagues were advanced within the organization.

128.     Defendant Carlota Santana, the Founder and Artistic Director and key decision-maker of the organization expressed discriminatory animus against employees of color.

129.     Defendant Hanaah Frechette Bates, the Executive Director and key decision-maker of organization, had direct knowledge of the pay discrepancy and denial of promotions to Plaintiff and refused to investigate or to remedy the discrimination.

130.     Defendants' conduct, individually and jointly, as described herein is a violation of New York City Administrative Code, Chapter 1, §8-107(1)(a)(3).

131.     By reason of the actions of Defendants as set forth herein, Plaintiff has been caused to sustain damages in the amount to be determined following a trial on the merits plus interest, costs and attorneys' fees.

## COUNT IV
### [Violation of the New York State Human Rights Law]

132.     Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "131" of this Amended Complaint as if fully set forth herein.

133.     At all times material hereto, Defendants Spanish Dance Arts is an "employer" as defined by the New York State Executive Law, Article 15, §292(5).

134.     At all times material hereto, Defendants Hanaah Frechette Bates, and Carlota Santana are "persons" as defined by the New York State Executive Law, Article 15, §292(1)

135.     At all times material hereto, Plaintiff was an "employee" as defined by the New York State Executive Law, Article 15, §292(6).

136.    As a Mestiza woman of Hispanic and Native American descent, Plaintiff is a member of a protected class under the New York State Executive Law, Article 15, §296.

137.    As set forth herein Plaintiff endured disparate treatment and a pattern of discriminatory conduct by Defendants, including but not limited to pay discrepancy and denial of promotion and advancement, directed at Plaintiff because of her race.

138.    Plaintiff received positive feedback for her work and was continuously tasked with additional responsibilities to the benefit of Defendants, yet Plaintiff was paid less than her white colleagues, was denied the opportunity for promotion and advancement, and was marginalized in status while similarly situated white colleagues were advanced within the organization.

139.    Defendant Carlota Santana, the Founder and Artistic Director and key decision-maker of the organization expressed discriminatory animus against employees of color.

140.    Defendant Hanaah Frechette Bates, the Executive Director and key decision-maker of organization, had direct knowledge of the pay discrepancy and denial of promotions to Plaintiff and refused to investigate or to remedy the discrimination.

141.    Defendants' conduct, individually and jointly, as described herein is a violation of New York State Executive Law, Article 15, §296.

142.    By reason of the actions of Defendants set forth herein, Plaintiff has been caused to sustain damages in the amount to be determined following a trial on the merits plus interest, costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Leslie Geraldes, respectfully requests that this Court grant the following relief:

(a)    A declaratory judgment that the practices complained of herein are unlawful under the New York Labor Law;

(b)     An award of unpaid wages, minimum wages, overtime wages and spread of hours premiums due under the New York Labor Law;

(c)     An award of liquidated damages and statutory penalties as a result of Defendants' failure to pay wages, minimum wages, overtime compensation and "spread of hours" premiums pursuant to the New York Labor Law;

(d)     An award of monetary damages in an amount to be determined following a trial on the merits as a result of Defendants' discriminatory conduct in violation of New York Labor Law §194.

(e)     An award of monetary damages in an amount to be determined following a trial on the merits as a result of Defendants' discriminatory conduct in violation of New York City Administrative Code, Chapter 1, §8-107(a)(3);

(f)     An award of monetary damages in an amount to be determined following a trial on the merits as a result of Defendants' discriminatory conduct in violation of New York State Executive Law, Article 15, §296(1)(a) and (h);

(g)     An award of compensatory damages and punitive damages as a result of Defendant's violation of New York City Administrative Code, Chapter 1, §8-107(1)(a)(3);

(h)     An award of prejudgment and post-judgment interest;

(i)     An award of costs and expenses of this action with reasonable attorneys' fees; and,

(j)     Such other and further relief as this Court determines to be just and proper under the circumstances.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues.

Dated:  New York, New York
         October 12, 2023

                       Respectfully submitted,

                       CILENTI & COOPER, PLLC
                       **Co-counsel for Plaintiff**
                       60 East 42nd Street – 40th Floor
                       New York, New York 10165
                       T. (212) 209-3933
                       F. (212) 209-7102
                       E-mail: pcooper@jcpclaw.com

                       */s/ Peter Hans Cooper*

            By:    _____
                          Peter H. Cooper, Esq.

                       BAKER, BRAVERMAN & BARBADORO, P.C.
                       **Co-counsel for Plaintiff**
                       1200 Crown Colony Drive – Suite 610
                       Quincy, Massachusetts 02169
                       T. (781) 848-9610
                       F. (781) 848-9790
                       E-mail theresab@bbb-lawfirm.com

                       */s/ Theresa Barbadoro*

            By:    _____
                       Theresa Barbadoro, Esq.

To:    Matthew Cohen Esq.
       Amanda B. Slutsky, Esq.
       KAUFMAN DOLOWICH & VOLUCK, LLP
       **Attorneys for Defendants**
       135 Crossways Park Drive - Suite 201
       Woodbury, New York 11797
       Telephone (516) 681-1100
       Facsimile (516) 681-1101